THE PEOPLE, *ex rel.* McIver, *vs.* THE BOARD OF EDUCATION OF THE CITY OF NEW-YORK and others.

The city superintendent of common schools for the city and county of New-York has power to annul a certificate granted to a teacher.

MOTION for a peremptory mandamus. The relator was a licensed teacher of common schools in the city of New-York. On complaint of his alleged immorality, Joseph McKeen, city superintendent, gave ten days' notice to the relator, and to the trustees of the schools where he was employed, of his intention to annul the relator's certificate, and after ten days did annul it, by an instrument in the form prescribed by the state superintendent, (the secretary of state,) which was filed according to law. The board of education refused to pay the relator his salary thereafter, on the ground that he was not a "qualified teacher," within the statute. (1 *R. S.* 485, § 93.) The relator thereupon applied to this court for a mandamus, to compel the board of education and their president and clerk to pay his salary, on the ground that the city superintendent had no power to annul the certificate.

*R. J. Dillon*, for the defendants. I. A mandamus is not the proper remedy. The only remedy is an appeal to the state superintendent. (1.) The secretary of state is *ex officio* superintendent

of common schools. (1 *R. S.* 114, § 11.) The administration of a school system has necessarily many peculiarities requiring super-intendence, watchfulness and discretion, and to secure uniformity of administration throughout the state the state superintendent is clothed with power to make rules and prescribe forms, and is the ultimate appellate power in school matters. (*Id.* 468, § 9. *Id.* 487, § 124. *Randall's Syst.* 124. *Id.* 99, *No.* 16. *Id.* 274, 6.) (2.) From the acts and decisions of the city superintendent, an appeal lies to the state superintendent, which covers this particular case. (*Laws* 1851, 743, § 12. *Randall*, 276.) (3.) The decision of the state superintendent is, by statute, final. (1 *R. S.* 487. *Randall*, 124, 107.) The supreme court has decided that in cases where there is a right to appeal, his jurisdiction is also exclusive. The party cannot resort to the court. (*Easton* v. *Calendar*, 11 *Wend. Rep.* 93, 4.) II. The city (town) super-intendent may annul any certificate of a teacher, on ten days' notice. (*Randall*, 107, 155. *Laws* 1847, 670, § 37. *Common School Decisions*, 42, 46, 326.) (1.) There were for many years "county superintendents." These were abolished in 1847, (*Laws* 1847, *p.* 456, *ch.* 358, § 1;) except in the city of New-York. (*Laws* 1851, *p.* 743, *ch.* 386, § 13.) " *Town*" or "*city*" superintendents were substituted. The words " city" and "town" are equivalent in this use. (*Laws* 1847, *ch.* 480, § 1. *Laws* 1851, *p.* 742, *ch.* 386, § 11. *Randall*, 323, 4.) (2.) It is made his duty, (*Id.* § 11, *subd.* 2; *Randall*, 324,) " specially" among other things, to examine, in conjunction with the in-spectors of any ward, persons offering themselves for teachers ; to grant certificates of qualification. That is to say, he, in con-junction with the inspectors of " any ward," is to examine, but he *alone* is to grant certificates ; and his certificates are to be " countersigned" (not signed) by any inspectors before they are available in every ward of the city. They are the certifi-cates of the city superintendent *alone*, and the power to annul is in him *alone*. (3.) The state superintendent has prescribed the form of a certificate of license, which is the form annulled in this case, (*Randall*, 174:) also the form of an instrument annulling a certificate of license, which is the form used in this

The People *v.* The Board of Education of New-York.

case. (*Randall*, 174.) The power of annulling a certificate is of the greatest importance. It is necessary; it is incidental to, and part of, the general power of superintendence. (5 *Barb.* 47. *Laws* 1851, *p.* 743, § 11, *subd.* 3.) (4.) It is his duty specially, "by all means in his power, to elevate the character and qualifications of teachers, improve the means of instruction, and advance the interests of the schools." (*Randall*, 324, § 11, *sub.* 3.) III. This is a case peculiarly of *common school administration.* The city superintendent was acting within his proper jurisdiction. His action was regular, and free from error. But if not, it is a case in which his action can be reviewed only on appeal to the state superintendent, whose powers are entirely " adequate to give the relief to which the party may be entitled." His jurisdiction is, therefore, exclusive.

*Henry H. Anderson,* for the relator. I. As to the objection that the proper remedy is by appeal, and not by mandamus, we say, (1.) The appeal lies only to correct the determination of the city superintendent in matters involving the exercise of his discretionary power. (2.) The relator's objection to the attempt of the city superintendent to annul his certificate, goes to the jurisdiction of that officer, and therefore is not the subject of appeal. (3.) The attempt to annul is totally void, and therefore no legal obstruction to the right of the relator to recover his salary. It was never intended that the state superintendent should be the ultimate judge of the legal powers of the school officers. Such questions belong to the judiciary, while the state superintendent exercises a merely executive supervision over the local officers, guiding them in the discharge of the functions that are committed by law to their discretion. II. The defendants have unwarrantably assumed the functions of the city superintendent of New-York, and the town superintendents throughout the state, to be the same. Town superintendents were created by act of 1843. (*Sess. Laws, p.* 163.) This act abolished the offices of inspectors and commissioners, and substituted town superintendents in their stead. (§§ 1 *and* 2.) By section 8, town superintendents could grant certificates of qualification, which were

valid within their respective towns, the county superintendent to grant certificates valid in the county, and the state superintendent could qualify teachers to serve in any portion of the state. To a certain extent these were co-ordinate powers. The authority making the certificate could alone repeal it, subject, however, to the appellate powers of the county and state superintendents. This act did not affect the city and county of New-York. Prior to the passage of this act, the power of licensing teachers and annulling their licenses, vested in the inspectors throughout the state, who could alone annul their certificates. (1 *R. S. p.* 475, §§ 45, 46, 48.) The provisions of this act, made to relate to the city of New-York, will be found 1 *R. S. p.* 489, 493. By this act the commissioners, inspectors and trustees were declared to possess the same powers as the corresponding officers, under the foregoing provisions. (*See above, p.* 475, §§ 45, 46, 48.) Inasmuch, therefore, as the act of 1843 creating town superintendents did not affect the city of New-York, the power of granting and annulling certificates of qualification continued to reside in the inspectors. By the act of 1844, (*Sess. Laws* 1844, *p.* 498,) this power was continued in the inspectors. (§§ 30, 31, 34.) This act also provided (§ 44) for the appointment of a county superintendent for New-York, who was authorized to grant certificates, but to annul them alone, with the consent of two inspectors. These provisions continued in force until the passage of the act of 1851. (*Sess. Laws* 1851, *p.* 734, §§ 2 *and* 9.) This act abolished the office of county superintendent, and provides for the appointment of a city superintendent, who, in conjunction with two inspectors, is authorized to make certificates of qualification. Thus it seems that the town superintendents in the state at large were distinct officers from either the county or city superintendents of New-York, with altogether different powers and duties. It is true that the county superintendents were abolished by the act of 1847, but that act did not apply to the city of New-York. (*Sess. Laws* 1847, *p.* 456.) Town superintendents were not then substituted, but existed as they have previously existed under the act of 1843; nor were city superintendents then substituted.

The city superintendent of New-York, we have seen, was created by act of 1851, and the inception of his office, and the nature of its duties, are in nowise connected with the abolishing of county superintendents in 1847. The power to grant certificates results from the concurrent act of the city superintendent and two inspectors; and without this concurrent action, does not exist. It is true that the power of annulling a certificate is of the greatest importance. But it is not incidental to the general power of superintendence. The statutes have uniformly confined the power of annulling certificates to as high authority as that which originally granted them. The act of 1851 does not provide for the annulling of certificates. This omission was intentional. The power of removing teachers resides in the trustees who employ them. This is all that is required, to exclude improper persons from the schools. The authority to annul certificates is unnecessary and dangerous. But if the right to annul still exists, it vests in the appointing power, and must be exercised by the city superintendent and the inspectors in conjunction. This results, as a general rule, when the power of removal is not specifically defined. No good reason can be shown why the inspectors, who act in granting the certificate, should not co-operate in revoking it.

*By the Court,* EDMONDS, P. J. The question involved on this motion for a mandamus, is, whether the city superintendent of common schools for the city and county of New-York has power to annul a license granted to a teacher.

The county superintendents had that power originally, and the town superintendents have it now. In November, 1847, the office of county superintendent was abolished in every county except New-York, and there continued to be in that county a county superintendent, until 1851, when that office also was abolished and a city superintendent was substituted, and his powers and duties defined. They were very nearly the same with those formerly possessed by the county superintendent. But there were two marked alterations. One was that the county superintendent, without any aid, could grant certifi-

cates to teachers, while the city superintendent could do so only after an examination in conjunction with the ward inspectors. The other was, that that part of the statute which gave the county superintendent the power to annul any certificate was not, in express words, enacted in regard to the city superintendent. So that the power to annul a certificate has not been granted, in terms, to the city superintendent, as it was formerly to the county superintendent, and is now to the town superintendent; and it is claimed only by necessary implication.

That claim rests upon two grounds: first, that like the appointing power of the president of the United States the power of removal is necessarily implied; and second, that it is implied in the general clause of the statute creating the office of city superintendent, which makes it his duty "generally by all means in his power to promote sound education, elevate the character and qualifications of teachers, improve the means of instruction, and advance the interests of the schools committed to his charge."

As to the first consideration, it will be enough to remark that the examination of a teacher and licensing him can hardly be called an appointment to office. And as to the second, it is worthy of note that the precise words of this general delegation of powers were in the act creating the office of county superintendent, and immediately preceded it. So that the inference is irresistible that it was designedly omitted. Whether thus omitted because deemed unnecessary, as included in the general clause, or because it was intended not to confer the power, is not so clear. I can hardly suppose that the latter was the intention, for then, while the power of annulling the license of an unworthy teacher is vested in every town superintendent in the state, however small the town, or sparse its population—and some of them have a population scarcely exceeding one hundred—that power would not exist at all in the city, which has a population of over half a million; for be it remarked, that if the city superintendent has not the power, it is not possessed in the city by any one of the officers of the common schools, not even by implication. On the other hand, with this general clause, it was quite unnecessary to re-

peat the particular enactment, authorizing him to annul a license, for it would very naturally and almost necessarily be involved in the enactment which makes it his duty "by all means in his power to elevate the character and qualification of teachers." For my part, I find it difficult to conceive what means he can have, after a license is once granted, thus to elevate the character of teachers, unless it be the salutary restraint which must flow from his possessing the power to annul the license. And that restraint must be more serviceable for the object in view than even to grant a license in the first instance. For in granting a license among a dense population where it is so difficult to get at a true knowledge of the real character of any one, there is much greater liability to error than among the sparser population of the interior, and it would be lamentable and a strange omission in the law, that with this greater liability to error, there should be provided less means of correcting it.

Indeed, it seems to me that it is absolutely necessary that the power should be lodged somewhere, and there are no words in the statute relating to the city which confer it on any one, unless these general words confer it on the superintendent. The words are certainly broad enough to confer it, and comprehensive enough to render any special enactment unnecessary. A special enactment, on the other hand, is necessary in the case of town superintendents, because in regard to them there is no such general clause, nor any expression from which the power could be implied.

I therefore am of opinion that the power has been properly exercised by the city superintendent in this case, and the motion for a mandamus must be denied.

[NEW-YORK GENERAL TERM, December 5, 1853. *Edmonds, Edwards, Mitchell* and *Roosevelt*, Justices.]